IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:12-CR-181** |
| v. | : | |
| **ROBERT G. BARD** | : | **(Judge Rambo)** |

# **M E M O R A N D U M**

Presently before the court are two motions, a motion to quash the indictment (Doc. 44) and a motion to exclude a document titled "Bard Misrepresentations 4/30/10" ("Misrepresentations Document") (Doc. 46), both of which are filed by Defendant. At issue in the respective motions is the propriety of the Government's use of the Misrepresentations Document during grand jury proceedings, and the admissibility of that Document at the trial in this matter, currently scheduled for June 11, 2013. For the reasons that follow, the court will deny both motions.

## **I.      Background**

Prior to the commencement of the captioned action, Bard was a defendant in a civil suit wherein the Securities and Exchange Commission ("SEC") brought securities fraud allegations against Bard and his company, Vision Specialist Group. *See* Docket. No. 1:09-CV-1473-WWC. The civil suit was initiated by the SEC on July 30, 2009. Bard was initially represented in that matter by Amy B. Carver, Esq., Catherine M. Recker, Esq., and Robert E. Welsh, Jr., Esq., all of the law firm Welsh & Recker, P.C. ("Welsh & Recker Attorneys"). On December 1, 2010, Dennis E. Boyle, Esq. and Megan E. Schanbacher, Esq., both of Boyle

Litigation, entered their appearance on behalf of Defendant. The Welsh & Recker Attorneys subsequently withdrew their appearance on December 7, 2010.

On November 23, 2009, as the SEC investigation into Bard's activities was proceeding, Bard entered into a proffer agreement with the U.S. Attorney's Office that set forth conditions under which Bard agreed to speak with the U.S. Attorney's Office "with regard to an investigation involving mail fraud." (Doc. 45-1, p. 2 of 32.) The agreement identified the "United States" and "Robert G. Bard" as the parties to the agreement and was signed by Bruce Brandler, Assistant U.S. Attorney, Robert E. Welsh, Jr., Esq., counsel for Bard, and Bard. Specifically, the agreement proposed a detailed oral proffer from Bard in the form of an interview with the understanding that "nothing contained in the oral proffer given by Mr. Bard will be used against him in the government's case-in-chief in any criminal case other than prosecution for perjury, false statement or obstruction of justice." (*Id.*, p. 3 of 32.)

After signing the agreement, Bard participated in an oral proffer session on November 23, 2009. In attendance at the proffer session were Bard, Bard's Counsel, and Assistant U.S. Attorney Bruce Brandler. Additionally, because the SEC had a pending civil case against Bard and Bard wished to resolve the civil matter in addition to any future criminal matter, Bard agreed to allow officials from the SEC attend and participate in the proffer session.

Following the proffer session, counsel for the SEC was unsatisfied with the extent of Bard's proffer. On April 19, 2010, the SEC sent Bard a letter indicating that "the [proffer] was wholly inadequate." (Doc. 45-1, p. 16 of 32.) The letter reiterated the SEC's interest in obtaining a pre-trial resolution and requested

2

"fulsome responses to the questions raised in [a previously sent] January 15[, 2010] email by April 28th[, 2010]." (*Id.*) In response, Bard provided additional information to his counsel, Mr. Welsh, by way of email dated April 30, 2010. Mr. Welsh then reformatted the information into a table, labeled the document "Bard Misrepresentations 4/30/10," and subsequently produced it to the SEC. Despite the production of this additional information, Bard and the SEC did not settle the civil case, nor did Bard enter into a plea agreement in the criminal matter. Rather, summary judgment was granted in favor of the SEC on November 10, 2011, *see SEC v. Robert Glenn Bard*, 2011 U.S. Dist. LEXIS 130264 (M.D. Pa. Nov. 10, 2011), and Mr. Welsh was notified by letter dated August 26, 2010, that a criminal prosecution against Bard would ensue (Doc. 45-1, p. 25-26 of 32).

On January 19, 2012, Bard received a letter from Assistant U.S. Attorney Brandler indicating that he was the target of a federal Grand Jury investigation. (*Id.*, p. 28-29 of 32.) On July 18, 2012, Bard was indicted and charged with securities fraud, wire fraud, mail fraud, bank fraud, investment advisor fraud, and making false statements to the FBI. One of the pieces of evidence introduced during the grand jury proceedings was the Misrepresentations Document. Defense counsel further represents that the Government has indicated its intent to use the Misrepresentations Document at trial. In the instant motions, Defendant challenges the propriety of the use of the Misrepresentations Document at the grand jury proceedings and seeks to exclude its admission at trial.

**II.     Discussion**

Defendant contends that the Misrepresentations Document was improperly introduced at the grand jury proceedings or, in the alternative, that it should be excluded from trial on the grounds that the document contains immunized information as a result of the proffer agreement, and the document was otherwise produced in the course of plea negotiations, and thus protected by Federal Rule of Evidence ("FRE") 410. The Government opposes both motions, arguing that FRE 410 is inapplicable in this instance. The Government further argues that, because the SEC requested the supplemental information and the SEC was not a party to the proffer agreement, the Misrepresentations Document is not protected under the terms of the proffer agreement. For the following reasons, the court agrees with the Government and will deny both motions.

   **A.     Motion to Quash Indictment**

Defendant argues that the Misrepresentations Document constituted plea negotiations and was produced by using information obtained pursuant to a proffer agreement and therefore should have been excluded from the grand jury investigation pursuant to Federal Rule of Criminal Procedure ("FRCrP") 11(f) and FRE 410(a).[1] Defendant further asserts that the Grand Jury has been prejudiced by

---

[1] Rule 11(f) states that "The admissibility or inadmissibility of a plea, plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f).

Federal Rule of Evidence 410 provides, in relevant part:

In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

***
(3) a statement made during a proceeding on either of those pleas under Federal
(continued...)

the introduction of the Misrepresentations Document and the proper remedy is to quash the indictment. The court disagrees.

The court need look no further than the plain language of the proffer agreement to determine that the introduction of the Misrepresentations Document at the grand jury proceedings did not violate the terms of the proffer agreement. The proffer agreement makes clear that "it is understood that nothing contained in the oral proffer given by Mr. Bard will be used against him in the government's *case-in-chief in any criminal case* other than a prosecution for perjury, false statement or obstruction of justice." (Doc. 45-1, p. 3 of 32)(emphasis added.) Proffer agreements are interpreted in light of contract law principals, *see United States v. Merz*, 396 F. App'x 838, 841 (3d Cir. 2010), and thus the court will look at its plain terms and give effect to the parties' intent, *see United States v. Hardwick*, 544 F.3d 565, 577 (3d Cir. 2008). Clearly, the proffer agreement is devoid of any mention of use of proffered information before a grand jury. Rather, the agreement only restricts the use of proffered information during the government's case-in-chief during a criminal trial. Moreover, the rules dealing with exclusion of evidence at trial have no application to grand jury proceedings and thus cannot form the basis for dismissal of the indictment. *See* Fed. R. Evid. 1101 (d)(2) ("These rules – except those on privilege – do not apply to the following: . . .(2) grand-jury proceedings."); *United*

---

[1](...continued)
Rule of Criminal Procedure 11 or a comparable state procedure; or

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410 (a)(3 & 4).

*States v. Stein*, 2005 U.S. Dist. LEXIS 11141, *17 (E.D. Pa. June 8, 2005) (referring to FRE 410 and FRCrP 11(f) as an "exclusionary rule," not a privilege). Indeed, the grand jury is "an institution separate from the courts, over whose functioning the courts do not preside . . . ." *United States v. Williams*, 504 U.S. 36, 47 (1992).

In short, because of Defendant's erroneous reliance on FRE 410 and FRCrP 11, and because a plain reading of the proffer agreement would not exclude the use of any proffered information at a grand jury proceeding, the court will deny the motion to quash the indictment. Additionally, even if the protections in the proffer agreement did pertain to grand jury proceedings, for the reasons explained more fully below, the court finds that the proffer agreement does not extend to the Misrepresentations Document, and therefore its introduction before the Grand Jury was not otherwise improper.

### B. Motion to Exclude the Misrepresentations Document

Although FRE 410 and FRCrP 11 are applicable to the trial in this matter, the court nevertheless finds that no violation of those rules will occur if the Misrepresentations Document is introduced into evidence at trial because: (1) FRE 410 is not implicated in this instance; and (2) the document is not subject to the proffer agreement.

Regarding FRE 410, it is true that statements "made during the plea discussions with an *attorney for the prosecuting authority*" are inadmissible when the discussions did not result in a guilty plea. Fed. R. Evid. 410(a)(4) (emphasis added). Here, the initial communication that requested supplemental information and the subsequent production of the Misrepresentations Document occurred solely between the SEC, Bard, and Bard's counsel. At no point did the U.S. Attorney's

6

Office, the prosecuting authority in this case, request such information. In fact, the U.S. Attorney's Office was unaware that such a request was made, and had no knowledge of the subsequent production of the Misrepresentations Document to the SEC. Simply put, the SEC was not a prosecuting attorney, nor was it authorized to enter into plea negotiations. While it may be inferred that the Misrepresentations Document was produced in an attempt to settle the related civil matter, the rules do not preclude statements or conduct during settlement negotiations in a civil dispute with a government regulatory agency in a subsequent criminal case. *See* Fed. R. Evid. 408 ("Evidence of the following are not admissible . . . : (2) conduct or a statement made during compromise negotiations about the claim – *except when offered in a criminal case and when the negotiations related to a claim by a public office in exercise of its regulatory, investigative, or enforcement authority.*" (emphasis added)); *United States v. Prewitt,* 34 F.3d 436, 439 (7th Cir. 1994) (holding that admissions of fault made in compromise of a civil securities enforcement action were admissible against the accused in a subsequent criminal action for mail fraud.) Accordingly, in the instant matter, FRE 410 only applies to statements by Bard made during plea discussions with the U.S. Attorney's Office related to his criminal matter, and is otherwise inapplicable to separate statements made to civil authorities in an effort to settle a related civil case.

Notwithstanding the inapplicability of FRE 410, the court must also determine whether the protections of the proffer agreement are applicable to the Misrepresentations Document. Defendant argues that the proffer agreement is applicable, reasoning that Bard subjectively believed that the production was part of the proffer and therefore part of the plea negotiations, and his belief was reasonable

7

under the circumstances. In support, Defendant points to the SEC's presence at the proffer session and to his receipt of the SEC's follow-up letter that made clear that the SEC found the proffer to be "wholly inadequate." Defendant argues that "any person in Mr. Bard's position . . . would reasonably believe that any additional information provided under the circumstances would be considered part of the proffer or plea negotiation." (Doc. 47 at p. 16 of 22.) The court disagrees.

To determine whether a statement was made as part of plea negotiations, many courts have adopted the two-tiered test articulated in *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978), which provides that the court must determine "first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." Other courts, however, have adopted a "totality of the circumstances" test. *See Stein*, 2005 U.S. Dist. LEXIS 11141 at *25 (gathering cases). Although the Third Circuit has not directly addressed this issue, the district court in *Stein* analyzed the amendments to and the legislative history of FRE 410, as well as case law pertaining to the admissibility of statements made in a proffer session. The *Stein* court concluded that the "totality of the circumstances" test is the appropriate standard when evaluating whether a defendant's statements should be excluded as part of plea negotiations. While the court finds the reasoning in *Stein* persuasive, it need not resolve which test to apply because, under either test, the court must consider whether Defendant subjectively believed that the statement was part of the proffer and whether that belief was objectively reasonable. *See id*. at *42-43 (applying the totality of the circumstances test and finding that the defendant

believed that an off-the-record discussion with the Assistant U.S. Attorney was part of a proffer discussion and that belief was reasonable under the circumstances.)

Here, the court finds that even if Defendant believed that the production of the Misrepresentations Document was supplemental to the proffer and therefore covered under the terms of the proffer agreement, such a belief was not reasonable under the circumstances. Initially, the court notes that although Defendant argues that *Bard* believed the production of the document was part of the proffer, Bard was represented by Mr. Welsh and Ms. Carver at the time of the disclosure. In fact, the letter from the SEC requesting the additional information was sent to Mr. Welsh and Ms. Carver, not Bard. Thus, this is not a situation involving an unsuspecting *pro se* defendant. That Bard was represented by counsel at the time of the disclosure necessarily militates against a finding that Bard's belief was reasonable. Bard and his counsel could have inquired or sought assurances that any further production would be protected by the terms of the proffer. They did not. Bard ultimately produced the requested information to his attorneys, who then synthesized it in chart format before producing it to the SEC.

Several other factors guide the court's reasonableness determination and require a finding that Defendant's belief was not reasonable. First, as stated above, the request for additional information was not from the U.S. Attorney's Office, but from the SEC, a non-party to the proffer agreement. Second, the proffer agreement made clear it applies to "a detailed *oral proffer* from Mr. Bard." (Doc. 45-1, p. 2 of 32) (emphasis added.) A plain reading of the agreement indicates that the "oral proffer" references the November 23, 2009 oral proffer session, and does not refer to any subsequent discussions or production of documents, especially where, as here,

9

those discussions were by written communication. In fact, the proffer agreement makes clear that any "derivative information can be used against Mr. Bard and can be used for any other purpose deemed appropriate by the government." (*Id*., p. 3 of 32.) Third, the subsequent communications and production were made five months after the oral proffer session. The temporal distance between the oral proffer and the SEC's follow-up communications precludes a finding that the follow-up was merely an extension of the proffer session. Fourth, the Government notes that the Misrepresentations Document was presented to the court in the civil proceedings as an exhibit to the SEC's statement of material facts in support of its motion for summary judgment.[2] Defense counsel[3] raised no objection to the introduction of the document, admitted to the information contained therein, and the court, relying in part on that information, granted summary judgment in favor of the SEC. The fact that Defendant only now objects to the use of the Misrepresentations Document further militates against a finding that Defendant reasonably believed that the production of the document was part of the proffer or plea negotiations. Based on these circumstances, the court finds that Defendant's belief that the production of the Misrepresentations Document was subject to the proffer agreement, even if sincere, was unreasonable.

**III.** **Conclusion**

---

[2] All exhibits attached the SEC's statement of material facts are sealed. However, the Government asserts that the Misrepresentations Document was attached as Exhibit U to the SEC's statement of material fact, and the SEC's statements comport with the contents of the Misrepresentations Document.

[3] At that point in the civil litigation, Bard was represented by Mr. Boyle and Ms. Schanbacher, who are representing Bard in this criminal matter.

For the reasons set forth herein, Defendant's motion to quash the indictment (Doc. 44) and motion to exclude the Misrepresentations Document (Doc. 46) will be denied. An appropriate order will issue.

                                                           s/Sylvia H. Rambo
                                                          United States District Judge

Dated: May 6, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : CASE NO. 1:12-CR-181
:
**v.** :
:
**ROBERT G. BARD** :

# **O R D E R**

In accordance with the accompanying memorandum, it is **HEREBY ORDERED** that Defendant's motion to quash the indictment (Doc. 44) and motion to exclude the Misrepresentations Document (Doc. 46.) are DENIED.

                                      s/Sylvia H. Rambo
                                      United States District Judge

Dated: May 6, 2013.