IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : CASE NO. 1:12-CR-181
:
**v.** :
: **(Judge Rambo)**
**ROBERT G. BARD** :

## MEMORANDUM

Presently before the court are two motions in limine, each filed by Defendant Robert G. Bard, seeking to exclude any evidence of and reference to Defendant's prior bad acts, pursuant to Federal Rule of Evidence 404(b). (Docs. 53 & 55.) For the following reasons, the motions will be denied.

**I.** **Background**

    **A.** **The Charged Conduct**

On July 18, 2012, a federal grand jury returned a twenty-one count indictment charging Defendant with: (1) securities fraud, in violation of 15 U.S.C. § 78j(b) and 78ff (Count One); (2) wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2-15); (3) mail fraud, in violation of 18 U.S.C. § 1341 (Counts 16-18); (4) bank fraud, in violation of 18 U.S.C. § 1344 (Count 19); (5) investment advisor fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17 (Count 20); and (6) false statements, in violation of 18 U.S.C. § 1001 (Count 21).

The indictment alleges the following. Defendant was President and sole owner of Vision Specialist Group, L.L.C. ("Vision Specialist"), an investment advisor group registered in Pennsylvania and West Virginia, and located in Warfordsburg, Pennsylvania. In that capacity, Defendant perpetuated a fraudulent

scheme wherein he solicited and obtained millions of dollars under false pretenses. Specifically, the indictment alleges that Bard represented himself as a deeply religious man of the highest integrity, and failed to disclose that in September, 2004, he was terminated as a stock broker after the brokerage firm he worked for discovered that he had prepared and submitted investment documents that contained forged customer signatures. As a result, the Financial Industry Regulatory Authority ("FINRA") investigated and determined that Bard forged customer signatures and improperly guaranteed investment returns. On October 6, 2005, Defendant signed a letter of acceptance, waiver, and consent ("AWC"), which barred his future association with any FINRA member. Moreover, Bard failed to inform his clients that he filed a petition for bankruptcy on July 22, 2005, and that he was in bankruptcy until August 11, 2011, at which time his personal debts were discharged by order of the bankruptcy court. Bard, instead, represented to his clients that he had eighteen years of financial success and that he could be trusted with their life savings.

    The indictment further alleges that, beginning in September, 2006, Bard invested millions of dollars of his clients' funds in L International Computers, Inc. ("L Computer"), and continued to do so even after he complained that L Computer was "bogus," resulting in a loss of over $3 million to his clients. Defendant similarly invested in other securities that resulted in the loss of several hundred thousand dollars. To conceal these losses, Bard repeatedly provided clients with false verbal assurances and phony account statements that grossly overstated the values in their accounts. Following these misrepresentations, Defendant's clients incurred more

than $2 million in additional losses, while Defendant generated over $852,000 in fees.

### B. The Contested Evidence

Pursuant to Rule 404(b), Defendant seeks to exclude any evidence of or reference to (1) Defendant's prior bankruptcy, and (2) the investigation into Defendant by the National Association of Securities Dealers ("NASD") and/or FINRA ("FINRA investigation"). As to the FINRA investigation, Defendant seeks to exclude the AWC (Doc. 55-3) as well as a deposition transcript excerpt wherein he references the investigation (Doc. 55-4). Defendant argues that "[t]he only plausible purpose for admitting this evidence is to prove that because Mr. Bard previously engaged in similar conduct that is alleged to have occurred here, he is more likely to have committed the current offenses." (Doc. 56, p. 10 of 14.) Regarding Defendant's prior bankruptcy adjudication, Defendant argues that the introduction of evidence of his bankruptcy would suggest that, because he endured financial struggles, he has the criminal propensity to commit the alleged offenses. In short, Defendant argues that both pieces of evidence are "mere propensity" evidence, which are inadmissible under Rule 404(b). The Government contends that the challenged evidence is "intrinsic" evidence of fraud, and therefore not subject to Rule 404(b). For the following reasons, the court agrees with the Government.

## II. Discussion

### A. Rule 404(b)

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular

occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, Rule 404(b) does not apply "to evidence of acts which are 'intrinsic' to the offense charge." Fed. R. Evid. 404(b) (advisory committee's note to 1991 amendments); *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002). Most Circuits define intrinsic evidence as evidence that is "inextricably intertwined" with the charged offense. *See United States v. Merritt*, 2013 U.S. Dist. LEXIS 13397, *8 (E.D. Pa. Feb. 1, 2013) (gathering cases). The Third Circuit has rejected that definition, finding that the "intrinsic" label applies only to "two narrow categories of evidence": (1) evidence of uncharged acts that "directly proves" the charged offense; or (2) evidence of "uncharged acts performed contemporaneously with the charged crime" that "facilitate the commission of the charged crime." *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010).

Defendant argues that neither evidence of the FINRA investigation nor Defendant's petition for bankruptcy offers direct proof of the crimes alleged. In support, Defendant argues that the alleged fraud committed here, namely Defendant's concealment of his clients' financial losses, is unrelated to Defendant's past financial straits or the FINRA investigation. The court disagrees.

In order to prove mail, wire, or bank fraud, the Government must prove that Defendant knowingly devised a scheme to defraud or obtain money by materially false pretenses. *See* Third Circuit Model Jury Instructions §§ 6.18.1341, 1343, 1344. In the indictment, the Government set forth an alleged scheme whereby Defendant represented himself as an experienced and trustworthy financial advisor, while choosing to withhold information regarding his personal bankruptcy and a FINRA investigation into his prior misconduct. The alleged omission of this

4

information, coupled with Defendant's alleged representation of himself as an experienced financial advisor, tends to prove that Bard knowingly defrauded his clients by taking their money under false pretenses. Thus, this evidence is intrinsic because it is directly probative of one the elements of the charged crimes.

Defendant tries to limit the scope of the fraud by stating: "the fraud charged is not that Mr. Bard 'obtained money by false pretenses', but rather, that he 'concealed client losses.'" (Doc. 63, p. 13 of 19.) This argument represents an overly-narrow reading of the indictment. Rather, the indictment specifically alleges a broader scheme wherein Defendant allegedly took his clients' money under false pretenses, then concealed losses and collected fees. In short, the court concludes that the evidence of Defendant's bankruptcy and of the FINRA investigation are intrinsic to the crimes alleged because they are part of the overall fraudulent scheme alleged in the indictment and are probative to Defendant's efforts to obtain money under false pretenses. *See United States v. Benjamin*, 125 F. App'x 438, 441 (3d Cir. 2005) (affirming district court ruling that challenged evidence was intrinsic to the government's case because it demonstrated the defendant's overarching fraudulent scheme).

Lastly, Defendant argues that the temporal distance between the indictment and the FINRA investigation (7 years) and the indictment and the petition for bankruptcy (7 years) provides further evidence that there is no correlation between those prior acts and the alleged criminal actions. This argument does not affect the court's conclusion above that the challenged evidence is intrinsic to the fraudulent scheme. In any event, the court does not find the lapse of time to be so significant as to render the prior acts and the charged offenses completely unrelated.

In short, because the challenged evidence is intrinsic to the crimes charged, Rule 404(b) is inapplicable.[1] Accordingly, Defendant's motions will be denied in this regard.

### B. Rule 403

Regardless of whether the court deems the evidence intrinsic or extrinsic, the court must perform a Rule 403 analysis. *See United States v. Lenegan*, 425 F. App'x 151, 155-56 (3d Cir. 2011). Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. District courts are empowered with broad discretion to determine whether evidence should be excluded under Rule 403. *United States v. Pelullo*, 14 F.3d 881, 888 (3d Cir. 1994). In conducting this balancing test, the court must consider that the prejudice that it is to measure is "unfair prejudice . . . based on something other than [the evidence's] persuasive weight." *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012). "Unfair prejudice does not simply mean damage

---

[1] Assuming, *arguendo,* that Rule 404(b) is applicable, the challenged evidence would nevertheless likely be admissible. First, it is not clear how Defendant's prior petition for bankruptcy could be considered propensity evidence under Rule 404(b)(1), because evidence regarding a personal bankruptcy petition does not necessarily show criminal propensity for the crimes charged here. Assuming, however, that the bankruptcy evidence demonstrates criminal propensity, such evidence would likely be admissible because it would show motive to effectuate the fraudulent scheme. *See* Rule 404(b)(2) ("[E]vidence [of crimes or other acts] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."); *see also United States v. Shelow*, 2011 U.S. Dist. LEXIS 141626, *21 (E.D. Pa. Dec. 9, 2011) (ruling that evidence of financial distress admissible to show motive to obtain funds in fraudulent investment scheme). Likewise, evidence of FINRA's investigation into Bard's NASD violations, which include forged signatures on investment documents, improperly guaranteeing minimum returns, and effectuating improper financial transactions, would likely be admissible because it tends to show knowledge of effectuating fraudulent financial transactions or lack of accident.

to the opponent's cause." *Id.* (quoting *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009)). Rather, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Cross*, 308 F.3d at 324 n. 23 (quoting Fed. R. Evid. 403 advisory committee note). Moreover, although evidence may be excluded under Rule 403 prior to trial, the Third Circuit has cautioned that "pretrial Rule 403 exclusions should rarely be granted . . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *Hagan v. Goss*, 2013 U.S. Dist. LEXIS 74979, *7 (M.D. Pa. May 29, 2013) (quoting *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990)).

The court explained above that the challenged evidence is highly probative to prove an element of the offenses charged (*i.e.,* knowingly defrauding by materially false pretenses). However, Defendant argues that evidence of the FINRA investigation would be highly prejudicial if admitted because the charged offences involve allegations of fraudulent and deceitful behavior, and "[a]dmitting evidence that Mr. Bard previously admitted to conduct similar to conduct now charged would lead the jury to believe that he is guilty of the current offense solely because he engaged in similar conduct in the past." (Doc. 56, p. 12 of 14.) Similarly, Defendant argues that "[a]dmitting that Mr. Bard himself previously filed for bankruptcy would lead the jury to conflate the issues and would be highly prejudicial." (Doc. 54, p. 13 of 15.)

The court concludes that the probative value of the challenged evidence is not substantially outweighed by the danger of unfair prejudice. Defendant's

7

arguments here essentially repackage his argument that the challenged evidence is prejudicial because it is propensity evidence, an argument the court already rejected. None of Defendant's arguments show that the challenged evidence would unfairly prejudice Defendant, or that any prejudice substantially outweighs the highly probative nature of the evidence. *See Cross*, 308 F.3d at 323 ("When evidence is highly probative, even a large risk of unfair prejudice may be tolerable."). Accordingly, the court sees no reason to exclude the challenged evidence at this juncture, and Defendant's motions will be denied.

The court notes, however, that the deposition excerpt attached to Defendant's motion in limine (Doc. 55-4), which includes a three-page excerpt of an April 12, 2007 deposition of Defendant wherein Defendant references an investigation, is confusing, has little or no context, and is potentially cumulative. In its response, the Government does not clarify whether it intends to introduce the deposition at trial or whether it intends to introduce these specific pages. Given the Third Circuit's reluctance to exclude evidence under Rule 403 at the pretrial stage, the court will not exclude the deposition excerpt at this time. However, if the Government intends to introduce portions of Defendant's April 12, 2007 deposition at trial, those portions shall be submitted to the court at least one week in advance of trial to determine whether that evidence would pass muster under Rule 403.

**III.**      <u>**Conclusion**</u>

      For the reasons set forth herein, the court will deny Defendant's motions in limine.  An appropriate order will issue.

                                                  <u>s/Sylvia H. Rambo</u>
                                                  United States District Judge

Dated:  June 20, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : CASE NO. 1:12-CR-181
:
**v.** :
:
**ROBERT G. BARD** : **(Judge Rambo)**

# O R D E R

In accordance with the accompanying memorandum, it is **HEREBY ORDERED** as follows:

1. Defendant's Motions in Limine (Docs. 53 & 55) are **DENIED**;

2. If the Government intends to introduce portions of the Defendant's April 12, 2007 deposition at trial, those portions shall be submitted to the court at least one week prior to trial.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: June 20, 2013.