IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:12-CR-181** |
| | : | |
| **v.** | : | |
| | : | **Judge Sylvia H. Rambo** |
| | : | |
| **ROBERT G. BARD** | : | |

# M E M O R A N D U M

In this criminal case, Defendant Robert G. Bard, who was convicted of 21 counts related to his participation in an investment advisor fraud, filed a motion requesting his continued release from incarceration pending appeal (Doc. 141), which is opposed by the Government (Doc. 145).  The court finds that Defendant has failed to demonstrate a valid basis to grant his request, and will accordingly deny the pending motion.

## I.        Background

For the purposes of this motion, the court only briefly summarizes the relevant background; a more detailed version can be found in the court's opinion regarding the court's calculation of loss for sentencing purposes (the "Loss Opinion").  *See United States v. Bard*, Crim. No. 12-cr-0181, Doc. 124 (M.D. Pa. July 3, 2014).

Defendant was president and sole owner of Vision Specialist Group ("Vision Specialist"), an investment advisory firm registered in Pennsylvania and located in Defendant's hometown, Warfordsburg, Pennsylvania.  In that capacity, Defendant perpetrated a fraudulent scheme wherein he solicited and obtained millions of dollars of his clients' funds under false pretenses.  Defendant provided

his clients with fee-based advisory services, and Vision Specialist calculated the fee amounts and requested payments from the custodial broker, TD Ameritrade. The fees were deducted directly out of the clients' accounts and transferred into Defendant's operating account. Defendant invested in highly speculative and risky securities, using margin loans to fund purchases, which had the effect of increasing his clients' risks and ultimately resulted in margin calls when the values of the securities declined.

Defendant used a variety of methods to mislead his clients into believing their account balances were much greater than they were and were actually increasing in value despite the downturn in the economy. For example, to conceal the losses, Defendant repeatedly provided clients with false verbal assurances and manufactured fraudulent account statements that grossly overstated the values in their accounts. He untruthfully told his clients that there were procedures in place that would guard against any significant losses to their accounts. Although his clients received account statements directly from the custodial broker that accurately reported the values, Defendant caused his clients to disregard the accurate statements by using the manufactured documents coupled with his explanations that the custodial broker's statements did not include the entirety of the client's investments. These continued misrepresentations caused his clients to continually invest with VSG.

Unbeknownst to the clients, Defendant caused them to lose, in some cases, the entire corpus of their savings, while collecting $852,383.00 in fees for his services. Following an investigation which was prompted by a report by one of Defendant's victims, Defendant was charged in a 21 count indictment on November 19, 2009. (Doc. 1.) Defendant filed pre-trial motions, including a motion seeking to

exclude evidence based on an alleged violation of the proffer agreement (Doc. 46), which the court denied on May 6, 2013, after finding that the terms of the proffer agreement did not cover the Bard Misrepresentations and that Defendant's belief of coverage was, even if sincere, unreasonable (Doc. 52). Defendant also filed motions in limine seeking to exclude evidence of and reference to his declaration of bankruptcy (Doc. 53) and to exclude evidence of and reference to any prior investigation by financial regulatory bodies (Docs. 53 & 55), which the court denied on June 20, 2013, after finding that the challenged evidence was intrinsic to the fraud, highly probative to prove that Defendant knowingly defrauded by materially false pretenses, not impermissible 404(b) propensity evidence, and not unfairly prejudicial (Doc. 66).

A trial on the charges commenced on August 12, 2013, and the jury returned a guilty verdict on all 21 counts on August 21, 2013. (Doc. 91.) On July 24, 2014, the court issued an opinion addressing Defendant's objections to the pre-sentence report, finding that the loss amount, for purposes of sentencing, was the amount that Defendant placed at risk through his fraudulent conduct and warranted an eighteen-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(J), and that the number of victims warranted a four-level increase pursuant to U.S.S.G. §2B1.1(b)(2)(B). (Doc. 124.) The court sentenced Defendant to a 262-month term of incarceration and ultimately ordered Defendant to pay restitution in the amount of $4,204,210.78. (Doc. 132, *as amended* Doc. 133.) Defendant filed a notice of appeal immediately after sentencing. (Doc. 134.) Trial counsel withdrew and the federal public defender was appointed to represent Defendant for purposes of appeal. Defendant is currently incarcerated at the Federal Correctional Institution at Loretto.

On October 30, 2014, Defendant filed the instant motion for release pending appeal.  (Doc. 141.)  The Government timely filed its brief in opposition on December 12, 2014.  (Doc. 145; *see also* Doc. 144 (granting the Government's unopposed motion for extension of time to respond).)  The matter has been sufficiently briefed and is appropriate for disposition.

## II.      Legal Standard

Defendant's motion is governed by 18 U.S.C. § 3143(b), which provides, in pertinent part, as follows:

> (1)     Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
> > (A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > (B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result it –
> >
> > > (i)   reversal,
> > >
> > > (ii)   an order for a new trial,
> > >
> > > (iii)  a sentence that does not include a term of imprisonment, or
> > >
> > > (iv)  a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b).

In *United States v. Miller*, the Third Circuit explained the procedure a district court must follow in reviewing a motion for release pending appeal:

> Under [Section 3143], after first making the findings as to flight, danger, and delay, a court must determine that the question raised on appeal is a "substantial" one, *i.e.*[,] it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful.

753 F.2d 19, 23 (3d Cir. 1985). Absence of precedent is not enough; the question must still be "significant." *See United States v. Smith*, 793 F.2d 85, 89 (3d Cir. 1986); *see also United States v. Cordaro*, Crim. No. 10-cr-0075, 2012 WL 3113933, *5 (M.D. Pa. July 31, 2012). A question is significant if, for example, the issue is "debatable among jurists" or "adequate to deserve encouragement to proceed further." *See Smith*, 793 F.2d at 90 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also United States v. Brown*, 356 F. Supp. 2d 470, 476 (M.D. Pa. 2005); *Cordaro*, 2012 WL 3113933 at *5.

After a court finds that the question on appeal is substantial, it must still determine "whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." *Miller*, 753 F.2d at 23. This standard does not require the court to conclude that its own orders are likely to be reversed. Rather, the phrase "likely to result in reversal or an order for a new trial" signifies that a court "may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.*

Importantly, because there is a presumption of detention after sentencing, a defendant bears the burden to prove that bail pending appeal is

warranted under Section 3143. *Id.* at 22, 24; *United States v. Bissell*, 954 F. Supp. 903, 906 (D.N.J. 1997) ("[Section] 3143(b) creates a presumption against postconviction release pending appeal . . . . [T]here is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances.").

## III.        Discussion

Initially, the court notes that the Government concedes that Defendant poses no risk of flight or danger to the community under subpart (a) of Section 3143. (Doc. 145, p. 5 of 17.)  Indeed, Defendant was previously released on an unsecured bond and a surety bond and appeared for all court proceedings.  Furthermore, the offense underlying Defendant's convictions were economic in nature and the court has no reason to find that Defendant is a violent man.  Thus, Section 3143(a) is satisfied.

Defendant raises three principal issues in support of his instant motion, which he contends represents substantial questions of law and fact likely to result in reversal, an order for a new trial, a sentence that does not include imprisonment, or a reduced sentence that will be less than the expected duration of the appeal.  (*See* Doc. 142, p. 4 of 9.)  Each of Defendant's claims are without merit.

### A.        Bard Misrepresentations 4/30/10

Defendant first claims on appeal that this court erred in permitting the Government to refer to the Bard Misrepresentations document.  (Doc. 142, p. 6 of 9.)  This claim was asserted in Defendant's pretrial motion to exclude and addressed by the court.  (Doc. 52.)  As explained by the court in its memorandum:

Here, the initial communication that requested supplemental information and the subsequent production of the Misrepresentations Document occurred solely between the SEC, Bard, and Bard's counsel. At no point did the U.S. Attorney's Office, the prosecuting authority in this case, request such information.  In fact, the U.S. Attorney's Office was unaware that such a request was made, and had no knowledge of the subsequent production of the Misrepresentations Document to the SEC.  Simply put, the SEC was not a prosecuting attorney, nor was it authorized to enter into plea negotiations. . . .  Accordingly, in the instant matter, FRE 410 . . . is [inapplicable].

Notwithstanding the inapplicability of FRE 410, the court must also determine whether the protections of the proffer agreement are applicable to the Misrepresentations Document.

*   *   *

Here, the court finds that even if Defendant believed that the production of the Misrepresentations Document was supplemental to the proffer and therefore covered under the terms of the proffer agreement, such a belief was not reasonable under the circumstances.  Initially, the court notes that although Defendant argues that *Bard* believed the production of the document was part of the proffer, bard was represented [by counsel] at the time of the disclosure. . . .  Thus, this is not a situation involving an unsuspecting *pro se* defendant. . . .  Bard and his counsel could have inquired or sought assurances that any further production would be protected by the terms of the proffer. They did not.  Bard ultimately produced the requested information to his attorneys, who then synthesized it in chart format before producing it to the SEC.

Several other factors guide the court's reasonableness determination and require a finding that Defendant's belief was not reasonable.  First, as stated above, the request for additional information was not from the U.S. Attorney's Office, but from the SEC, a non-party to the proffer agreement.  Second, the proffer agreement

made clear it applies to "a detailed *oral proffer* from Mr. Bard." A plain reading of the agreement indicates that the "oral proffer" references the November 23, 2009 oral proffer session, and does not refer to any subsequent discussions or production of documents, especially where, as here, those discussions were by written communication. In fact, the proffer agreement makes clear that any "derivative information can be used against Mr. Bard and can be used for any other purpose deemed appropriate by the government."

Third, the subsequent communications and production were made five months after the oral proffer session. The temporal distance between the oral proffer and the SEC's follow-up communications precludes a finding that the follow-up was merely an extension of the proffer session. Fourth, the Government notes that the Misrepresentations Document was presented to the court in the civil proceedings as an exhibit to the SEC's statement of material facts in support of its motion for summary judgment. Defense counsel raised no objection to the introduction of the document, admitted to the information contained therein, and the court, relying in part on that information, granted summary judgment in favor of the SEC. The fact that Defendant only now objects to the use of the Misrepresentations Document further militates against a finding that Defendant reasonably believed that the production of the document was part of the proffer or plea negotiations. Based on these circumstances, the court finds that Defendant's belief that the production of the Misrepresentations Document was subject to the proffer agreement, even if sincere, was unreasonable.

(*Id.* at pp. 6-7, 9-10 (internal citations and footnotes omitted).) Defendant fails to raise a compelling new argument in support of his instant motion, and the court finds that this issue fails to raise a substantial question of law for the purposes of Section 3143(b).

**B.     Personal Bankruptcy and Regulatory Investigations**

Defendant next claims that the court erred in permitting the Government to introduce evidence of his declaring personal bankruptcy and the investigations by the NASD and FINRA.  This again was an issue addressed by the court in a memorandum, wherein it reasoned:

> In the indictment, the Government set forth an alleged scheme whereby Defendant represented himself as an experienced and trustworthy financial advisor, while choosing to withhold information regarding his personal bankruptcy and a FINRA investigation into his prior misconduct.  The alleged omission of this information, coupled with Defendant's alleged representation of himself as an experienced financial advisor, tends to prove that Bard knowingly defrauded his clients by taking their money under false pretenses.  Thus, this evidence is intrinsic because it is directly probative of one the elements of the charged crimes.

> \*   \*   \*

> [T]he indictment specifically alleges a broader scheme wherein Defendant allegedly took his clients' money under false pretenses, then concealed losses and collected fees. In short, the court concludes that the evidence of Defendant's bankruptcy and of the FINRA investigation are intrinsic to the crimes alleged because they are part of the overall fraudulent scheme alleged in the indictment and are probative to Defendant's efforts to obtain money under false pretenses.

> \*   \*   \*

> The court [further] concludes that the probative value of the challenged evidence is not substantially outweighed by the danger of unfair prejudice.  Defendant's arguments here essentially repackage his argument that the challenged evidence is prejudicial because it is propensity evidence, an argument the court already rejected.  None of Defendant's arguments show that the challenged evidence would unfairly prejudice Defendant, or that any prejudice

substantially outweighs the highly probative nature of the
evidence.

(Doc. 66, pp. 4-6.)

This issue does not raise a substantial question of law.  As explained,
the foregoing evidence was highly probative of Defendant's knowledge, which was
an essential element of the crimes charged.  Defendant's omission of this
information, coupled with Defendant's representing himself as an experienced
financial advisor, was certainly probative in proving that Defendant knowingly
defrauded his clients by using false pretenses.  Accordingly, Defendant fails to raise
a question that is "debatable among jurists."  *See Smith*, 793 F.2d at 90.

## C.   Defendant's Civil Case with the SEC

Defendant next claims on appeal that the court erred by permitting the
Government to introduce evidence of the civil case related to the SEC, including the
judgment, finding of contempt, and a restraining order.  The court has reviewed the
corresponding portions of the record cited by the Government and represented to be
the challenged testimony.  This corresponding testimony was not unfairly prejudicial
and was highly probative.

Several portions of the challenged testimony was not subject to an
objections, and in one case, was introduced as part of a stipulation.  The court does
not believe it committed plain error, whereby it will be reversed only if: (1) there was
error; (2) the error was clear or obvious; (3) the error affected the defendant's
substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity, or
public reputation of the judicial proceedings."  *United States v. Stinson*, 734 F.3d
180, 184 (3d Cir. 2013) (quotation marks and internal citations omitted).
Accordingly, the court summarily rejects Defendant's challenges to the portions of

the trial testimony that either correspond to a stipulation or fail to correspond to an objection, (*see* Notes of Testimony, pp. 233-36 (stipulation), 461 (no objection), 542 (objection sustained), 552 (no objection), 554 (objection sustained), 874 (no objection), 875 (no objection), 925 (no objection)), because Defendant has failed to establish the court committed plain error that will likely result in reversal by permitting this testimony.

Moreover, the testimony of Paul Rihn, a staff accountant at the SEC, was necessary to introduce the Bard Misrepresentations document, which, as explained *supra* Part III.A., was ruled admissible at trial.  For the reasons stated above, the court does not believe this issue raises a substantial question of law.

**IV.**　　　　**Conclusion**

For the foregoing reasons, the court concludes that Defendant has failed to sustain his burden in demonstrating that he is entitled to release pending appeal pursuant to 18 U.S.C. § 3143(b).  Accordingly, the court will deny Defendant's motion for release pending appeal.

An appropriate order will issue.

　　　　　　　　　　　　　　　　s/Sylvia H. Rambo
　　　　　　　　　　　　　　　　United States District Judge

Dated:  December 30, 2014.