IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:12-cr-181** |
| **v.** | : | |
| **ROBERT G. BARD** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant Robert G. Bard's second amended motion under 28 U.S.C. § 2255, in which he alleges that three of his prior attorneys provided constitutionally ineffective counsel. For the reasons that follow, the motion will be denied without a hearing as the record in this case clearly shows that Bard's claims are without merit.

## I. Background

The Third Circuit on direct appeal summarized the general facts underlying this case as follows:

> From 2000 to 2004, Bard worked as a stock broker at Centaurus Financial, Inc. Following an internal review, the company reported to the National Association of Security Dealers (NASD) that Bard had forged customer signatures and guaranteed a customer a particular investment return for a variable annuity. As a result, Bard was fired and was barred from associating with NASD members. He filed for personal bankruptcy soon after.
>
> Unable to work as a broker, Bard started a business [Vision Specialist Group] as an investment advisor. Many of his clients were elderly, retired and unsophisticated investors. Despite promising a conservative investment strategy, Bard purchased high-risk securities

that resulted in millions of dollars of losses in 2007 and 2008 when the country entered the Great Recession. During this period, Bard sent clients doctored account statements that masked the losses. He also instructed his secretary, Edwin Donaldson, to compose and send clients a newsletter falsely stating that the investments were in good health. When TD Ameritrade refused to provide further services to Bard due to his financial management, he instructed Donaldson to write and send a newsletter falsely attributing the decision to the small size of Bard's business. He also instructed Donaldson to forge clients' signatures on IRA disbursement forms "innumerable times."

*United States v. Bard*, 625 F. App'x 57, 58 (3d Cir. 2015).

Investigations began into Bard's activities after one of his victims reported to the Securities and Exchange Commission ("SEC") and the Federal Bureau of Investigation ("FBI") that she had been defrauded by Bard. The SEC ultimately filed a civil complaint against Bard in July 2009. On November 23, 2009, Bard voluntarily participated in a proffer interview wherein he admitted that he provided clients with phony account statements to conceal losses. On June 14, 2010, the United States Attorney's Office sent Bard's attorney, Robert Welsh, Esquire, a proposed plea agreement under which Bard would plead guilty to mail fraud. (Doc. 197-1.) On August 25, 2010, Attorney Welsh sent a letter to the United States Attorney's Office requesting that it not prosecute Bard (*see* Doc. 197-2), but the office declined his request (*see* Doc. 171-1, pp. 4-5 of 71). In late September, 2010, Bard fired Attorney Welsh and retained Dennis Boyle, Esquire for both the SEC case and the criminal investigation.

On July 18, 2012, a grand jury returned a 21-count indictment, alleging that Bard committed securities fraud (Count 1); wire fraud (Counts 2-15); mail fraud (Counts 16-18); bank fraud (Count 19); investment advisor fraud (Count 20); and the offense of making false statements to the FBI (Count 21). (Doc 1.) Attorney Boyle entered his appearance in Bard's criminal case on September 28, 2012. (Doc. 35.)

In a letter to Bard dated July 1, 2013, Attorney Boyle sought to confirm that Bard understood the current status of plea negotiations. (Doc. 171-1, p. 2 of 71.) The letter referred to the July 2010 plea deal offered by the Government and indicated that Bard had rejected the offer, which had since expired. (*Id.*) The letter explained that they could attempt to negotiate a new plea deal for which Bard would likely receive a guideline reduction for acceptance of responsibility, but that the decision as to whether to proceed to trial rested solely with Bard. (*Id.*) Bard signed the letter, confirming that he was "fully aware of the previous plea offer originally conveyed to [ ] prior counsel, Robert Welsh, Esquire, and [that he] voluntarily rejected that offer." (*Id.*)

Bard elected to proceed to trial and, after seven days, the jury found him guilty on all 21 counts. (Doc. 91.)

On November 4, 2013, the probation office provided a presentence report to counsel. (*See* Doc. 95.) The court was advised that there were unresolved issues

related to the amount of loss and number of victims, and, on February 11, 2014, scheduled a hearing, with the consent of counsel, to be held on March 11, 2014. (*See* Doc. 98, *amending* Doc. 97; *see also* Doc. 100-1, p. 4 of 4.) On February 28, 2014, Bard filed a motion seeking to continue the hearing (Doc. 99), which the Government opposed (Doc. 100). In support of his request, Bard averred, *inter alia*, that he anticipated that he would need surgery, and further, that "it has taken several months to locate an appropriate expert" and that the expert, who had since been retained, "require[d] additional time to conduct an examination of the voluminous discovery involved and prepare a report." (Doc. 99, ¶¶ 2, 5-6, 8.) The court held a conference call on March 3, 2014, during which Attorney Boyle advised the court that Bard had scheduled a surgery consult for the same day as the hearing, and conceded that he was aware of the need for an expert well before trial. (*See* Doc. 101, p. 2.) The court denied the continuance motion, finding that any resulting prejudice was Bard's own making and thus did not justify causing a hardship to the victims or Government witnesses. The court explained that Bard's scheduling a surgery consult for the day of the hearing was "highly suspect at best and disrespectful at worst," and that it was Bard's belated decision to retain an expert only weeks before the hearing that caused the expert to be unprepared to testify on an issue that had been identified by defense counsel prior to trial. (*Id.* at pp. 2-3.)

At the evidentiary hearing, the Government presented an FBI agent as well as an expert witness, who defense counsel effectively cross examined. Based on the evidence presented at trial and during the hearing, the court determined that the loss amount was between $2.5 and $7 million, and that the case involved 50 or more victims. (Doc. 124 at 1.)

After the hearing, Attorney Boyle moved to withdraw as counsel. (Doc. 106.) The court granted the motion and appointed the Federal Public Defender's Office as counsel for Bard. (Docs. 107 & 110.) At sentencing, the court calculated an advisory guideline range of 262 to 327 months (Doc. 137 at 1), and sentenced Bard to 262 months' imprisonment, consisting of 240 months on each of Counts 1 through 18, 262 months on Count 19, and 60 months on each of Counts 20 and 21, all to be served concurrently. (Doc. 133 at 3.)

On direct appeal, Bard, represented by Federal Public Defender Frederick Ulrich, Esquire, raised numerous challenges to his sentence. Relevant here, Bard argued that this court failed to consider the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). *Bard*, 625 F. App'x at 59-60. The Third Circuit affirmed this court's judgment. *Id.* at 61.

On September 9, 2016, Bard filed a *pro se* motion under § 2255 to vacate, set aside, or correct his sentence (Doc. 166), followed by an amended motion on October 6, 2016 (Docs. 170 & 171). On January 12, 2017, the court appointed

5

Attorney Kyle Rude to represent Bard for purposes of his § 2255 proceedings. (Doc. 183.) Bard then filed an amended § 2255 motion on January 16, 2018 (Doc. 185), and filed a request to conduct discovery (Doc. 186), which the court granted (Doc. 191). Bard filed a second amended § 2255 motion on June 29, 2018, and subsequently a supporting brief. (Docs. 193 & 194.) In his amended motion, Bard argues (1) that Attorney Welsh and Attorney Boyle were ineffective for failing to fully communicate the Government's plea offer and his potential sentencing exposure (Doc. 194, pp. 6-7); (2) that Attorney Boyle was ineffective for failing to retain a defense expert to assist in trial preparation and the post-trial evidentiary hearing (*id.* at p. 14); and (3) that Attorney Ulrich was ineffective for failing to argue that this court did not appropriately exercise its discretion by giving meaningful consideration to the § 3553(a) factors (*id.* at p. 17). On September 14, 2018, the Government filed a brief in opposition to the motion (Doc. 197), and Bard replied on September 27, 2018. Thus, the matter is ripe for disposition.

## II. <u>Legal Standard</u>

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691 (1984). Both prongs

must be established. *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires the defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct "requires showing that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687) (internal quotations marks omitted). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689)). It is well settled that the benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id.* It is not

7

enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id.* Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id.* Effectiveness of counsel applies to advise given by counsel during guilty plea discussions. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

## III. <u>Discussion</u>

Bard argues that his attorneys rendered constitutionally ineffective counsel in several respects. The court will address each of Bard's arguments in turn.

### A. <u>Ineffectiveness claims with respect to plea negotiations</u>

Bard first argues that both Attorney Welsh and Attorney Boyle rendered ineffective assistance during plea negotiations. The Supreme Court has held that the Sixth Amendment right to counsel "extends to the plea-bargaining process," and that during plea negotiations, defendants are "entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (internal quotation marks omitted).

### 1. Attorney Welsh

Bard claims that Attorney Welsh provided ineffective assistance by failing to inform him of the June 14, 2010 plea offer until September 2010, after the effective date of the offer had lapsed, and further, by failing to review the sentencing guidelines with him. Bard's arguments regarding Attorney Welsh fail, however, because "the right to counsel attaches upon indictment." *Kennedy v. United States*, 756 F.3d 492, 493-94 (6th Cir. 2014); *see Missouri v. Frye*, 566 U.S. 134, 140 (2012) (explaining that "[t]he Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of criminal proceedings," including "arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea"). Attorney Welsh only represented Bard before the return of the indictment and therefore Bard cannot prevail on an ineffectiveness claim against him.

Even assuming, as Bard argues, that the right to counsel attached when the Government sent the preindictment plea offer to Attorney Welsh, Bard later acknowledged to Attorney Boyle that he had been fully aware of the plea offer and had voluntarily rejected it. (Doc. 171-1.) Thus, by Bard's own admission, he was fully aware of the material aspects of the Government's offer yet elected not to resolve the matter preindictment.

Based on the foregoing, Attorney Welsh is not found to have been incompetent.

### 2. Attorney Boyle

Bard claims that Attorney Boyle was ineffective because he did not provide Bard with enough information to make a reasonably informed decision about whether to plead guilty or go to trial. However, the record reflects that no formal plea offer was pending during Attorney Boyle's representation. Assuming, *arguendo*, that the June 2010 plea offer was still on the table after Bard retained Attorney Boyle and was indicted, the record further reflects that Bard was not prejudiced by Attorney Boyle's alleged failure to properly advise him of the potential sentence he faced. Indeed, Bard was made aware of his potential sentence at least as early as his arraignment when Magistrate Judge Smyser informed him that he faced 20-year prison terms on Counts 1 through 18; a 30-year term on Count 19; and 5-year terms on Counts 20 and 21. (Doc. 197-3 at 3:1-5:12); *See United States v. Barndt*, 2014 WL 4187983, \*3 (W.D. Pa. Aug. 22, 2014) (rejecting ineffective assistance of counsel claim because "[e]ven if counsel never specifically informed him of the possibility of a life sentence (i.e., the statutory maximum sentence) . . . he was informed of that possibility at his arraignment").

Furthermore, Bard offers no legitimate reason to conclude that additional analysis by Attorney Boyle – or by Attorney Welsh – would have affected his

10

decision to proceed to trial. Bard aptly notes that, had he accepted the plea offer to one count of mail fraud, he likely would have received a sentence well below the 262 months he received post-trial. (Doc. 194, pp. 11-12.) However, Bard acknowledged to Attorney Boyle prior to trial that he was aware that a guilty plea could result in a "2 to 3 point reduction at sentencing for acceptance of responsibility," which would likely "lessen [his] sentence," yet he nonetheless elected to proceed to trial. In fact, he has refused to acknowledge any wrongdoing through the duration of these proceeding. The statements he made at his sentencing regarding his innocence show that he had no intention of pleading guilty and further indicate that he was not prejudiced by any failure of counsel to discuss a plea offer or sentencing guidelines. *See Wheeler v. Rozum*, 410 F. App'x 453, 458 (3d Cir. 2010) ("Those Courts of Appeals that have considered the question have recognized that protestations of innocence are relevant to the *Strickland* prejudice inquiry.") Accordingly, Attorney Boyle is not found to have been incompetent with regard to plea negotiations.

### B. <u>Ineffectiveness claims with respect to retaining an expert</u>

Bard further argues that Attorney Boyle was constitutionally ineffective for not securing an expert to assist with trial preparation and to testify at the post-trial evidentiary hearing. However, as this court has already found, the absence of a defense expert was due to Bard's "unilateral decisions and feet-dragging tactics."

11

(Doc. 101, p. 3.) Attorney Boyle was prepared to retain an expert for the evidentiary hearing, at the latest, by January 2014, but Bard did not give his authorization for Attorney Boyle to incur such an expense until February 24, 2014 - less than three weeks prior to the hearing. Given Bard's delay in approving the retention of an expert, Attorney Boyle sought to continue the hearing, but his request was appropriately denied by the court.

In addition, Bard fails to show that an expert would have aided Attorney Boyle at trial and during post-trial proceedings. Bard argues that a defense expert could have assisted Attorney Boyle in his cross-examination of the Government's expert at trial and "could have provided at least counter points by which [the court] could have compared to determine loss" for sentencing purposes. (Doc. 194, p. 15.) However, Attorney Boyle, through his cross-examination and arguments, raised most of the issues that Bard speculates a defense expert could have raised. Indeed, Bard has not identified any specific ways in which Attorney Boyle's presentation to the jury and the court omitted critical issues that an expert would have identified. Instead, Bard merely speculates that a defense expert may have assisted Attorney Boyle in challenging some of the charges on statute of limitations grounds and also in challenging the amount of the loss. Speculation, however, is not sufficient to establish a substantial likelihood that the result would have been different. *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (stating that

"mere speculation" about what a witness may have said is not sufficient to establish prejudice).

Moreover, Counts 2 through 18 of the Indictment involved wires or mailings that occurred within the five-year statute of limitations period and thus were clearly timely, and Bard appears to concede that Count 19 for bank fraud fell within the ten-year limitations period. Because Bard was sentenced to concurrent terms 240 months on each of Counts 1 through 18, and a concurrent term of 262 months on Count 19, he would receive the same sentence even if Counts 1 through 18 were overturned. As to the amount of the loss, to effect a change in Bard's guideline range, the expert would have needed to effectively refute over half of the loss amount, or $3.3 million, yet Bard has not put forth any evidence to show that this would have been possible. Accordingly, Bard has failed to establish a substantial likelihood that a defense expert would have changed the outcome of his sentencing, and Attorney Boyle is not found to have been incompetent.

### C. Ineffectiveness claim with respect to Bard's direct appeal

Finally, Bard argues that his appellate counsel, Attorney Ulrich, rendered ineffective assistance because the appellate challenge to Bard's sentence should have included "a list of similarly situated defendants and their related sentences." (Doc. 194, p. 17.) This claim also fails.

On appeal, Attorney Ulrich argued that the sentencing court failed to meaningfully consider the need to avoid unwarranted sentencing disparity under 18 U.S.C. § 3553(a)(6). *See* Br. of Appellant, *Bard*, 625 F. App'x (No. 14-3605), 2014 WL 7036131, *60-62; Reply Br. of Appellant, *Bard*, 625 F. App'x 57 (No. 14-3605), 2015 WL 2193658, *10-11. In doing so, Attorney Ulrich directed the Third Circuit to Bard's sentencing memorandum, which "included cases in which courts had imposed downward variances for first time offenders who committed economic crimes with comparable loss amounts." Br. of Appellant, 2014 WL 7036131, *60; (*see also* Doc. 130, pp. 23-25). Bard claims that Attorney Ulrich should have instead provided the Third Circuit a "more detailed comparison," including "a list of cases of similarly situated defendants and their related sentences." (Doc. 194, p. 17.) He does not, however, provide a list of similarly situated defendants, and mere speculation that such a list could be compiled is not enough to establish deficient performance. Moreover, Attorney Ulrich was constrained to rely only on the list presented as sentencing rather than on a hypothetical new list, as "a defendant cannot complain on appeal that [his] sentence should have been reduced based on § 3553(a) factors that were never brought to the attention of the district court." *United States v. Filipiak*, 466 F.3d 582, 584 (7th Cir. 2006).

To the extent that Attorney Ulrich could have presented a new list of similarly situated defendants, Bard cannot establish prejudice. The Third Circuit rejected Bard's argument based on the list presented at sentencing because § 3553(a)(6) "only requires the court to consider 'sentence disparities' among defendants who are similarly situated in all relevant respects." 625 F. App'x at 60; *see United States v. Vargas*, 477 F.3d 94, 100 (3d Cir. 2007) (explaining that the "burden [is] on the defendant to demonstrate similarity by showing that other defendants' circumstances exactly paralleled his") (citations and quotations omitted), abrogated on other grounds by *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 169 (3d Cir. 2009)). The list Bard now proposes—defendants with "losses less than $5 million, who cooperated by giving a proffer, without any other aggravating factors," (Doc. 194, p. 17,) also would have failed to meet the Third Circuit's standard. Defendants satisfying those criteria would not necessarily be similarly situated in all respects, and even more, Bard himself does not satisfy those criteria. As this court previously found, the amount of loss exceeded $5 million (Doc. 139, at 8:20-9:3); Bard proffered but provided a fabricated email during the interview (*id.* at 11:17-25); and the court identified other factors that qualified as aggravating, such as the number of victims and obstruction of justice (*id.* at 46:7-47:5).

For these reasons, Bard has failed to establish that Attorney Ulrich was incompetent before the Third Circuit.

## IV. Conclusion

For the foregoing reasons, the petition filed pursuant to 28 U.S.C. § 2255 will be dismissed with prejudice.

                                                      s/Sylvia H. Rambo
                                                     SYLVIA H. RAMBO
                                                     United States District Judge

Dated: November 19, 2018